UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TILLIE SALTZMAN, Individually And On Behalf Of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    v.<br><br>CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN,<br><br>                Defendants. | 07 CV 09901 (SHS) (FM)<br><br><u>CLASS ACTION</u> |
| LENNARD HAMMERSCHLAG, Individually And on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    v.<br><br>CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK and GARY CRITTENDEN,<br><br>                Defendants. | 07 CV 10258 (SHS)<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION OF DAVID GARDEN FOR CONSOLIDATION, APPOINTMENT AS
LEAD PLAINTIFF PURSUANT TO §21D(a)(3)(B) OF THE SECURITIES EXCHANGE
<u>ACT OF 1934 AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

## I.   INTRODUCTION

Presently pending in this district are at least two securities fraud class actions (the "Actions") brought against Citigroup Inc. ("Citigroup" or the "Company") and certain of its officers and directors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

Movant David Garden ("Garden" or "Movant"), purchased 206,000 shares of Citigroup common stock between April 17, 2006 and November 2, 2007, inclusive (the "Proposed Class Period") and suffered estimated losses[1] of $2,130,405 as a result of Movant's transactions in Citigroup's publicly traded securities during the Proposed Class Period.  Movant respectfully submits this Memorandum of Law in support of his motion for: (i) consolidation of all related actions for all purposes pursuant to Rule 42 of the Federal Rules of Civil Procedure ("F.R.C.P."); (ii) appointment as Lead Plaintiff, pursuant to Section 21D of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4, in the Action on behalf of purchasers of Citigroup's publicly traded securities; and (iii) approval of Movant's selection of Lead Counsel.

---

[1]   The losses suffered by the Movant are not the same as his legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certifications required under Section 21D and, based upon information concerning the current market for the Company's common stock.  *See* Declaration of Joseph H. Weiss ("Weiss Decl."), January 7, 2008, Exh. C.

## II. PROCEDURAL BACKGROUND

On or about November 8, 2007, plaintiff in the above-captioned action styled *Saltzman v. Citigroup Inc.,* No. 07-cv-09901, filed an action on behalf of a proposed class consisting of all persons who purchased or otherwise acquired Citigroup common stock between April 17, 2006 and November 2, 2007, inclusive. Pursuant to 15 U.S.C. § 78u-4(a) (3) (A) (i), on November 8, 2007, notice of pendency of the action was published over a widely-available, national business-oriented wire service, *Business Wire,* advising members of the proposed class of their right to move the Court to serve as lead plaintiff no later than 60 days from the date of publication of the Notice (*i.e.,* by January 7, 2008). *See* Weiss Decl., Exh. A. This motion is filed within the 60-day period following publication of the November 8, 2007 notice given by plaintiff therein.[2]

## III. SUMMARY OF THE ACTION

Defendant Citigroup (NYSE:C) is a Delaware corporation which describes itself as a global, multibank holding financial services company that provides various financial services to customers in the United States and internationally. ¶ 15.[3] The Company's global Consumer segment offers banking, lending, insurance, and investment services. ¶ 15. The Company's Markets and Banking segment provides various investment and commercial banking services and products, which comprise investment banking and advisory services, debt and equity trading,

---

[2] The above-captioned action *Hammerschlag v. Citigroup Inc.*, No. 1:07-cv-10258 (SHS), has been accepted as related to an E.R.I.S.A. action pending before this Court, *Gray v. Citigroup Inc.*, No. 1:07-cv-9790 (SHS). Although the *Hammerschlag* action, like the instant action, alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, the *Hammerschlag* action is brought on behalf of purchasers of Citigroup securities between January 1, 2004 and November 5, 2007 (as compared to April 17, 2006 and November 2, 2007 in the instant action).

[3] References taking the form "¶__" refer to the complaint filed in the above-captioned action, *Saltzman v. Citigroup Inc.*, No. 07-cv-09901.

2

institutional brokerage, foreign exchange, structured products, derivatives, and lending. ¶ 15. Citigroup is based in New York, New York and maintains branch offices in the United States and internationally. ¶ 15.

The complaint alleges that during the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results. The complaint specifically alleges that: (i) Defendants' portfolio of collateralized debt obligations ("CDOs") contained billions of dollars worth of impaired and risky securities, many of which were backed by subprime mortgage loans; (ii) Defendants failed to properly account for highly leveraged loans such as mortgage securities; and (iii) Defendants failed to record impairment of debt securities which they knew or disregarded were impaired, causing the Company's publicly-disseminated financial results to be false and misleading.

On November 4, 2007, Citigroup announced significant declines in the fair value of $55 billion in the U.S. subprime debt exposure – a revenue decline related to those declines of $8 to $11 billion. ¶ 45. On this news, Citigroup's stock collapsed to open at $36 per share on November 5, 2007, a decline of 5% from the November 2 close and 25% from the October 12, 2007 close. ¶ 46.

The complaint alleges that the true facts which were known by the defendants but concealed from the investing public during the Class Period included the following: (a) Defendants' portfolio of CDO's contained billions of dollars worth of impaired and risky securities, many of which were backed by subprime mortgage loans; (b) Defendants failed to account for highly leveraged loans such as mortgage securities; and (c) Defendants failed to record impairment of debt securities which they knew or disregarded were impaired, causing the Company's results to be false and misleading. ¶ 47.

3

As a result of Defendants' false statements, Citigroup's stock price traded at artificially inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down more than 25% from the price before the Company's disclosures. ¶ 48.

## IV.     ARGUMENT

### A.     The Actions Should Be Consolidated

The above-captioned actions involve class action claims on behalf of purchasers of Citigroup's publicly traded securities and assert essentially similar and overlapping class claims for relief on behalf of purchasers of Citigroup securities. Consolidation is appropriate where, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42 (a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990). That test is met here and the Actions should be consolidated.

### B.     The Proposed Lead Plaintiff Should Be Appointed Lead Plaintiff

#### 1.     The Procedure Required By The PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4 (a) (3) (A) (i). Notice of pendency of the action was published over *Business Wire* on November 8, 2007. *See* Weiss Decl., Exh. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed

4

class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4 (a) (3) (A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4 (a) (3) (B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -
>
> (aa)     has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)     otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a) (3) (B) (iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. The Proposed Lead Plaintiff Satisfies The "Lead Plaintiff" Requirements of the PSLRA

The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4 (a) (3) (A) and (B) expires on January 7, 2008. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on November 8, 2007), David Garden herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the proposed class.

5

The Proposed Lead Plaintiff has duly signed and filed a certification stating that Movant has reviewed the complaint filed in the action and is willing to serve as the representative party on behalf of the Class. *See* Weiss Decl., Exh. B. In addition, the Proposed Lead Plaintiff has selected and retained experienced and competent counsel to represent Movant and the class. *See* Weiss Decl., Exh. D.

Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4 (a) (3) (B) and is entitled to have his application for appointment as Lead Plaintiff and approval of selection of counsel, as set forth herein, considered and approved by the Court.

### 3. The Proposed Lead Plaintiff Has A Significant Financial Interest In The Relief Sought By The Class

According to 15 U.S.C. § 21(a) (3) (B) (iii), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action. During the Class Period, as evidenced by, among other things, the accompanying signed certification, Movant purchased 206,000 shares of the Company's common stock during the Class Period and suffered estimated losses of $2,130,405 as a result of defendants' misconduct. *See* Weiss Decl., Exh. C. As a result, Movant herein has a significant financial interest in this action.

### 4. The Proposed Lead Plaintiff Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the

6

>class, (3) the claims or defenses of the representative parties are
>typical of the claims or defenses of the class, and (4) the
>representative parties will fairly and adequately protect the interests
>of the class.

Of the four prerequisites to class certification, only two - - typicality and adequacy - - directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Lax v. First Merchants*, 1997 U.S. Dist. LEXIS 11866 at *20; *Fischler v. Amsouth Bancorporation*, 1997 U.S. Dist. LEXIS 2875 at *7-8 (M.D. Fla. Feb. 6, 1997).

The Proposed Lead Plaintiff satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying appointment as lead plaintiff. Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *See In re Drexel Burnham Lambert Group, Inc.*, 960 F. 2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. Instead, the courts have recognized that:

>[T]he typicality requirement may be satisfied even if there are
>factual dissimilarities or variations between the claims of the
>named plaintiffs and those of other class members, including
>distinctions in the qualifications of the class members.

*Bishop v. New York City Dept. Of Housing Preservation and Development*, 141 F.R.D. 229, 238 (2d Cir. 1992). *See also Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D 562, 582 (S.D.N.Y. 1984).

The Proposed Lead Plaintiff seeks to represent a class of purchasers of the Company's publicly traded securities who have identical, non-competing and non-conflicting interests.  The Proposed Lead Plaintiff satisfies the typicality requirement, since he: (i) purchased the Company's common stock; (ii) at market prices allegedly artificially inflated as a result of defendants' violations of the federal securities laws; and (iii) suffered damages thereby.  Thus, typicality is satisfied since the claims asserted by the Proposed Lead Plaintiff arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory."  *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y.  1995).

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation.  *Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1405 (D. Conn. 1988).

Here, the Proposed Lead Plaintiff is an adequate representative of the class.  As evidenced by the injury suffered by Movant, who purchased the Company's common stock at prices allegedly artificially inflated by defendants' violations of the federal securities laws, the interests of the Proposed Lead Plaintiff are clearly aligned with the class members, and there is no evidence of antagonism between Movant's interests and those of the other members of the class.  In addition, as demonstrated below, Movant's proposed Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in the highest professional manner.

Thus, Movant *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23.

### C.  The Court Should Approve Movant's Choice of Counsel

Pursuant to 15 U.S.C. § 78u-4 (a) (3) (B) (v), proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class lead plaintiff seeks to represent. In that regard, Movant has selected the law firm of Weiss & Lurie to serve as Lead Counsel. Weiss & Lurie is a firm with extensive experience in successfully prosecuting shareholder and securities class actions and has frequently appeared in major actions in this and other courts. *See* Weiss Decl., Exh. D.

## V.  CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate all related actions; (ii) appoint the Proposed Lead Plaintiff as lead plaintiff in the related actions; and (iii) approve Movant's selection of lead counsel as set forth herein.

Dated: January 7, 2008

Respectfully submitted,

**WEISS & LURIE**

 /s/ Joseph H. Weiss
Joseph H. Weiss (JW-4534)
551 Fifth Avenue
New York, NY 10176
Tel: (212) 682-3025
Fax: (212) 682-3010

**Counsel for Movant David Garden and Proposed Lead Counsel for Plaintiff and the Class**