**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION OF COLORADO, TENNESSEE CONSOLIDATED RETIREMENT SYSTEM, SJUNDE AP-FONDEN, FJÄRDE AP-FONDEN, and PENSIONSKASSERNES ADMINISTRATION A/S, Individually and On Behalf of All Others Similarly Situated, | |
| | Electronically Filed |
| Plaintiffs, | No. 1:08-cv-0135 (SHS) |
| v. | ECF CASE |
| CITIGROUP INC., CHARLES O. PRINCE, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN, TODD S. THOMSON, ROBERT DRUSKIN, THOMAS G. MAHERAS, MICHAEL STUART KLEIN, DAVID C. BUSHNELL, JOHN C. GERSPACH, STEPHEN R. VOLK, GEORGE DAVID and KPMG LLP, | |
| Defendants. | |
| TILLIE SALTZMAN, Individually and On Behalf of All Others Similarly Situated, | |
| | Electronically Filed |
| Plaintiff, | No. 1:07-cv-9901 (SHS) |
| vs. | ECF CASE |
| CITIGROUP INC., CHARLES O. PRINCE, ROBERT E. RUBIN, STEPHEN R. VOLK, SALLIE L. KRAWCHECK, GARY L. CRITTENDEN and ROBERT DRUSKIN, | |
| Defendants. | |
| LENNARD HAMMERSCHLAG, Individually, and On Behalf of All Others Similarly Situated, | |
| | Electronically Filed |
| Plaintiff | No. 1:07-cv-10258 (SHS) |
| v. | ECF CASE |
| CITIGROUP INC., CHARLES PRINCE, SALLIE KRAWCHECK, and GARY CRITTENDEN, | |
| Defendants. | |

JUDY G. FISHER,

                    Plaintiff,

-   against -                        No. 08-cv-0136 (SHS)

CITIGROUP INC., ET AL.,

                    Defendants.

## THE GLOBAL PENSION FUNDS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION, FOR APPOINTMENT AS LEAD PLAINTIFFS, AND FOR SELECTION OF LEAD COUNSEL

Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Stephen D. Oestreich, Esq. (SO-8933) (Of Counsel)
Jonathan H. Beemer, Esq. (JB-0458)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
**ENTWISTLE & CAPPUCCI LLP**
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone:  (212) 894-7200

**SCHIFFRIN BARROWAY TOPAZ
   & KESSLER, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Richard S. Schiffrin, Esq.
Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.

*Attorneys for Plaintiffs, Public Employees' Retirement
Association of Colorado, Tennessee Consolidated
Retirement System, Sjunde AP-fonden, Fjärde AP-fonden,
and Pensionskassernes Administration A/S, and Proposed
Lead Counsel for the Class*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

    I.      THE GLOBAL PENSION FUNDS HAVE THE LARGEST FINANCIAL
           INTEREST IN THIS LITIGATION ........................................................................ 1

    II.     THE GLOBAL PENSION FUNDS ARE ADEQUATE IN ALL
           RESPECTS ........................................................................................................... 2

          A.     The Global Pension Funds Are A Proper and Cohesive Lead
               Plaintiff Group ......................................................................................... 3

          B.     The Claims of AP4, AP7, and PKA are Typical of the Class's
               Claims and These Sophisticated Institutions Are Not Subject To
               Unique Defenses ....................................................................................... 6

          C.     The Fact That Colorado PERA and TCRS Sold More Citigroup
               Shares Than They Purchased During the Class Periods Does Not
               Render Them Inadequate .......................................................................... 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005)...............................................................................9

*Barnet v. Elan Corp.*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...............................................................................................6

*Bersch v. Drexel Firestone, Inc.*,
519 F.2d 974 (2d. Cir. 1975) .....................................................................................................8

*Bhojwani v. Pistiolis*,
2007 WL 2197836 (S.D.N.Y. June 26, 2007) ...........................................................................5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ......................................................................................................6

*In re CIGNA Corp. Sec. Litig.*,
459 F. Supp. 2d 338 (E.D. Pa. 2006).........................................................................................9

*City of Brockton Ret. Sys. v. The Shaw Group, Inc.*,
2007 WL 2845125 (S.D.N.Y. Sep. 26, 2007)...........................................................................3

*Constance Sczesny Trust v. KPMG LLP*,
223 F.R.D. 319 (S.D.N.Y. 2004) .....................................................................................1, 2, 3

*Corwin v. Seizinger*,
2008 WL 123846 (S.D.N.Y., Jan. 8, 2008) ..............................................................................7

*Cromer Fin. Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001) ..............................................................................................9

*In re Donkenney Inc. Sec. Litig.*,
171 F.R.D. 156 (S.D.N.Y. 1997) ..............................................................................................5

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y 2005) ..................................................................................................3

*Ferrari v. Impath*,
2004 WL 1637053 (S.D.N.Y. July 20, 2004)............................................................................4

*Frank v. Dana Corp.*,
237 F.R.D. 171 (N.D. Ohio 2006) .............................................................................................9

*Glauser v. ECVI Career Coll. Hldg. Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006)...............................................................................................5

*Goldberger v. PXRE Group, Ltd.*,
2007 WL 980417 (S.D.N.Y. Mar. 30, 2007) ............................................................................6

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
2004 WL 3314943 (N.D. Ohio May 12, 2004) .........................................................................7

*In re GPC Biotech AG Sec. Litig.*,
No. 07 Civ. 6728 (DC), slip op. at 11 (S.D.N.Y. Jan. 8, 2008).................................................8

*Grace v. Rosenstock*,
   23 F. Supp. 2d 326 (E.D.N.Y. 1998) ........................................................................ 5

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................................ 2, 4

*Kusner v. First Pennsylvania Corp.*,
   531 F.2d 1234 (3d Cir. 1976) ................................................................................... 5

*In re Lloyd's Am. Trust Fund Litig.*,
   1998 WL 50211 (S.D.N.Y. Feb. 6, 1998) ................................................................ 8

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ............................................................................. 7, 8

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002) .............................................................................. 7

*In re NPS Pharms., Inc. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 87231 (D. Utah Nov. 17, 2006) ....................................... 7, 8

*In re NTL, Inc. Sec. Litig.*,
   2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) ............................................................ 9

*Olsen v. New York Cmty. Bancorp., Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ......................................................................... 4, 7

*In re Pfizer Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) ............................................................................. 2

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y 2001) ....................................................................... 5

*Richardson v. TVIA, Inc.*,
   2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .......................................................... 9

*Rochelle v. Marine Midland Grace Trust Co.*,
   535 F.2d 523 (9th Cir. 1976) ................................................................................... 5

*In re Royal Ahold, N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003) ................................................................................. 8

*In re Schering-Plough Corp. Sec. Litig.*,
   2003 WL 25547564 (D.N.J. Oct. 10, 2003) ............................................................. 9

*In re Sepracor Inc. Sec. Litig.*,
   233 F.R.D. 52 (D. Mass. 2005) ............................................................................. 10

*In re Smith Barney Transfer Agent Litig.*,
   2006 WL 991003 (S.D.N.Y. Apr. 17, 2006) ............................................................ 4

*Sofran v. LaBranche & Co., Inc.*,
   220 F.R.D. 398 (S.D.N.Y. 2004) ............................................................................. 4

*In re Turkcell Ilettsim Hizmetler, A.S. Sec. Litig.*,
   209 F.R.D. 353 (S.D.N.Y. 2002) ............................................................................. 9

*Takeda v. Turbodyne Tech., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) .............................................................. 7

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ...................................................................... 4

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
   2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) .................................................... 2

**Statutes**

15 U.S.C. § 78u-4(a)(2)(A) ...................................................................................... 2

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................ 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..................................................................... 1, 8

**Rules**

Rule 23 ............................................................................................................. 1, 2, 9

Rule 23(b)(3) ............................................................................................................ 8

Plaintiffs, the Global Pension Funds ("GPFs"),[1] on behalf of themselves and the Class, respectfully submit this reply memorandum of law in further support of their Motion for the entry of an order consolidating the above-referenced actions (the "Action"), appointing the GPFs as Lead Plaintiffs, and approving their selection of counsel.

## PRELIMINARY STATEMENT

All of the submissions to date confirm that the GPFs have the largest financial interest of any lead plaintiff applicant (*see* Section I, *infra*) that *also* satisfies the typicality and adequacy requirements of Rule 23 (*see* Section II, *infra*).  Under the PSLRA, the GPFs are presumptively the most adequate plaintiffs to lead this litigation.  *See* § 78u-4(a)(3)(B)(iii).  The ATD Group ("ATD") and STRS/SURS offer only speculative and factually unsupported arguments that do not constitute the "proof" that the PSLRA requires to rebut the presumption that the GPFs are the most adequate plaintiffs.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## ARGUMENT

I.    **THE GLOBAL PENSION FUNDS HAVE THE LARGEST FINANCIAL INTEREST IN THIS LITIGATION[2]**

This Court has the "discretion to appoint more than one lead plaintiff and can aggregate the losses suffered by a group of investors."  *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (citation omitted).  Of the four factors that courts examine to determine a lead plaintiff applicant's financial interest, ***the claimed loss is by far the most***

---

[1] Unless otherwise defined herein, capitalized terms shall have meanings given to such terms in the Global Pension Funds' January 28, 2008 Memorandum of Law In Further Support of Their Motion for Consolidation, for Appointment as Lead Plaintiffs, and for Selection of Lead Counsel.

[2] The longest potential class period for which the other applicants have presented their putative financial interest to date is the period from January 1, 2004 through November 5, 2007.  The GPFs believe that the period from January 2, 2004 to November 21, 2007 is the most appropriate class period.  Nevertheless, because not all applicants have submitted their putative losses for the most appropriate period, the GPFs will continue to present their financial interest for both of these potential class periods.  Proponents of the third proposed class period from April 16, 2006 through November 2, 2007 irresponsibly ignore critical facts that would disenfranchise a substantial portion of the class.

*significant*.  *See Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007); *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) (same).  During the period from January 2, 2004 to November 21, 2007, the GPFs suffered $132,020,643 in FIFO losses and $50,228,955 in LIFO losses and therefore have the largest financial interest of any movant that satisfies Rule 23's typicality and adequacy requirements.[3]  (*See* GPF Opp. Br. at 3-4.)

## II.    THE GLOBAL PENSION FUNDS ARE ADEQUATE IN ALL RESPECTS

The GPFs are a proper lead plaintiff applicant which has supported its adequacy to lead the Action through its "initiative" in pursuing the Class's best interests.  *See Constance Sczesny Trust*, 223 F.R.D. at 323.  A lead plaintiff applicant's proven willingness to pursue the Class's claims vigorously is fundamental to a determination of its adequacy.  *See Id*. at 324.  The GPFs have demonstrated their dedication to serving the best interests of the Class here by, among other things:  (i) filing a detailed Complaint based upon an extensive and continuing investigation; (ii) seeking relief for the Class by filing a Preservation Motion and Stay Lift Motion; (iii) conferring with counsel for the Defendants concerning document preservation and the prosecution of the Class's claims;[4] and (iv) entering into a Retainer Agreement and Joint Prosecution Agreement

---

[3] During the period from January 1, 2004 to November 5, 2007, the GPFs suffered $65,183,407 in FIFO losses and $50,843,929 in LIFO losses.  Although courts are split on whether FIFO or LIFO is the preferred approach, FIFO losses are clearly relevant given that:  (1) the IRS requires the use of FIFO in calculating tax losses for securities investments (*see, e.g., Kaplan*, 240 F.R.D. at 88); and (2) FIFO is more frequently used in calculating securities class action settlements.  ATD contends that the GPFs' application should be denied because the GPFs did not disclose their "start-of-class-period holdings."  (*See* ATD Opp. at 3, 20.)  Each of the GPFs' signed certifications, however, provides *all of the information* required by the PSLRA, and no other movant argues otherwise.  *See* 15 U.S.C. § 78u-4(a)(2)(A).  Moreover, the GPFs provided their opening balances in response to an inquiry from counsel for STRS/SURS, which was attached as Exhibit 1 to the January 28, 2008 Entwistle Declaration, mooting ATD's protests.  ATD further argues that the GPFs' Complaint alleged an "improperly long class period." (*See* ATD Opp. at 4.)  The Complaint, however, appropriately extends the Class Period by approximately two weeks to assert claims consistent with governing loss causation principles.  *Cf. In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (competing class period was "approximately ten and a half months longer than in the initial complaint").

[4] *See* Exhibit 18 to the January 28, 2008 Entwistle Declaration.

setting forth how they will direct this litigation and supervise their chosen counsel in the best interests of the Class.[5]

Other than filing the bare motion papers and certifications that the PSLRA requires, no other lead plaintiff applicant has taken any affirmative step evidencing the initiative required to lead the Class.  (*See, e.g.,* STRS/SURS Opp. at 7.)  Even the cases upon which STRS/SURS rely support the propriety of appointing the GPFs as lead plaintiffs here.  (*See* STRS/SURS Opp. at 7) (citing *City of City of Brockton Ret. Sys. v. The Shaw Group, Inc.*, 2007 WL 2845125, at *12 (S.D.N.Y. Sep. 26, 2007) (a group of sophisticated and experienced public pension systems who selected their counsel satisfies legislative concerns regardless of the relationship among the group members) (citations omitted); *see also In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y 2005) (institutional investor[s] with substantial losses less likely to cause "flurry of pointless activity" in form of intra-group disputes).)

### A.    The Global Pension Funds Are A Proper and Cohesive Lead Plaintiff Group

The other movants' speculation that the GPFs are an improper "lawyer-driven" group is contrary to the facts and fails to rebut the presumption that the GPFs are the most adequate plaintiffs to represent the Class.  *See Constance Sczesny Trust,* 223 F.R.D. at 324-25 ("conclusory assertions of inadequacy are  . . . insufficient to rebut the statutory presumption under the PSLRA … "); *see also Ferrari v. Impath*, 2004 WL 1637053, at *6 (S.D.N.Y. July 20,

---

[5] The GPFs are pleased to submit their Retainer Agreement and/or Joint Prosecution Agreement (which are attorney-client privileged communications) for the Court to review *in camera*.  The Joint Prosecution Agreement addresses, among other things, how the GPFs will communicate and resolve any disputes that may arise in the litigation and how they will supervise their counsel.  (*See, e.g,* Smith Decl. ¶ 15; Hennessee Decl. ¶ 14; Andersson-Kåremar Decl. ¶ 15; Gröttheim Decl. ¶ 15; and Jakobsen-Pedersen Decl. ¶ 14) (Exs. 2-6 to the January 28, 2008 Entwistle Decl.).) While STRS/SURS contend that they have addressed these important points bearing upon cohesiveness, they do not point to *any* facts in the record supporting this conclusory contention and their "Joint Declaration" does not speak to these issues.  (*See* STRS/SURS Opp. at 6.)

2004) (rejecting counsel's attempts to use "innuendo and inferences rather than established fact").[6]

Attempting to artificially inflate the size of the GPFs' group, STRS/SURS argue incorrectly that PKA lacks standing and is instead a group of eight public pension funds that the Court cannot consider as a single entity.  PKA is not a "mere 'administrator'" or even an investment advisor as STRS/SURS claim.  Rather, PKA was established by its eight owner funds for the express purpose of managing their investments and making all decisions related to those investments.[7]  (*See* Certification of Peter Damgaard Jensen and Michael Nellemann Pedersen ("PKA Cert."); Jakobsen-Pedersen Decl. ¶ 4.)[8]  PKA has full management and legal authority over its owner funds' investments and acts as a single investor on their behalf.[9]

To erase any doubt -- although there should be none -- the GPFs submit the Declaration of Christina Holmes ("Holmes Decl.") (Ex. 2), legal counsel for PKA which reiterates PKA's

---

[6] Because they possess the statutory presumption, the GPFs do not devote extensive argument addressing the other movants' putative adequacy.  *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (adequacy evaluation is properly limited to lead plaintiff applicant with the largest financial interest).  The GPFs, however, note that STRS/SURS continues to base its conclusory claims of "cohesion" upon a Joint Declaration that was executed *while* New Jersey was apparently considering a $400 million investment in Citigroup, which caused New Jersey to withdraw from these proceedings.  (*See, e.g.*, STRS/SURS Opp. at 1, 4, 6-8.)  Moreover, as noted extensively in the GPFs' and STRS/SURS' January 28, 2008 submissions, ATD is atypical and possesses unique defenses based upon, among other things, its unique and apparently continuing involvement with Citigroup, as well as its acquisition by Citigroup, concerning which ATD has failed to provide critical relevant information.  *See* Ex. 1 to the accompanying Reply Declaration of Andrew J. Entwistle (the "Entwistle Reply Decl."), Exhibits to which are designated "Ex. __."

[7] Because PKA's structure far exceeds the relationship between any third party asset manager and its clients, any case appointing an asset manager as lead plaintiff clearly supports the appointment of PKA, particularly in light of PKA's broad powers of procuration.  *See, e.g., Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) (because asset manager had attorney-in-fact authority, it had standing to prosecute securities fraud claims); *Olsen v. New York Cmty. Bancorp., Inc.*, 233 F.R.D. 101, 107 (E.D.N.Y. 2005) (same); *Kaplan*, 240 F.R.D. 95 (same); *In re Smith Barney Transfer Agent Litig.*, 2006 WL 991003, at *8-9 (S.D.N.Y. Apr. 17, 2006) (appointing agent and attorney-in-fact with authority to bring action, based on certification).

[8] These documents are attached as Ex. E to the January 7, 2008 Entwistle Decl. and as Ex. 6 to the January 28, 2008 Entwistle Decl., respectively.

[9] (*See* PKA Cert. (Ex. E to the Jan. 7, 2008 Entwistle Decl.) ("PKA has full power and authority to bring suit to recover for investment losses on behalf of itself and the pension funds it manages and administers."); *see also* Jakobsen-Pedersen Decl. at ¶ 4 (Ex. 6 to the Jan. 28 Entwistle Decl.) ("PKA serves as the sole manager and administrator for each of these funds and is permitted to take all legal actions on behalf of each fund regarding its investments, including filing a motion for lead plaintiff.").)

4

authority to bring this action and appends its "Power of Procuration" (the Danish equivalent of a "power of attorney") granted to PKA by each of its owner funds.  (*See* Holmes Decl. ¶¶ 4-6.) Thus, as an authorized representative of its owner funds with full authority to take legal action, PKA has standing to bring claims on their behalf, including class claims.[10]

The other applicants speculate that the GPFs are a "lawyer driven" group formed solely for the purpose of defeating competing lead plaintiff applications.  (*See, e.g.,* ATD Opp. at 5-6, 18-20; SURS/STRS Opp. at 2-3, 11.)[11]  The Declarations from principals of each of the GPFs (Exs. 2-6 to the Jan. 28, 2008, Entwistle Decl.) and the work that they have performed jointly in the Action to date demonstrate instead that the GPFs selected their counsel, agreed together to act as a group, and are united in serving the Class's best interests.  (*See, e.g,* Smith Decl. ¶¶ 6-18; Hennessee Decl. ¶¶ 7-17; Andersson-Kåremar Decl. ¶¶ 7-17; Gröttheim Decl. ¶¶ 7-17; and Jakobsen-Pedersen Decl. ¶¶ 7-16.)[12]  STRS/SURS' speculation that the GPFs must be lawyer-driven based upon the surmised timing of the group's formation is disingenuous at best because

---

[10] *See Kusner v. First Pennsylvania Corp.*, 531 F.2d 1234, 1237 (3d Cir. 1976) (a private action for damages based on Rule 10b-5 requires that the plaintiff or those he represents either bought or sold shares in connection with the fraud); *Rochelle v. Marine Midland Grace Trust Co.*, 535 F.2d 523, 527-28 (9th Cir. 1976) (bankruptcy reorganization trustee had standing to assert section 10b and 10b-5 claims on behalf of the debtor); *cf. Grace v. Rosenstock*, 23 F. Supp. 2d 326, 327 n.1 (E.D.N.Y. 1998) (permitting plaintiffs to substitute named plaintiff, as executor of estate, for deceased).

[11] STRS/SURS bases its arguments on a number of inapplicable cases.  *See, e.g., Bhojwani v. Pistiolis*, 2007 WL 2197836, at * 4 (S.D.N.Y. June 26, 2007) (aggregating even unrelated investors is proper when it will advance the Class's interests); *Glauser v. ECVI Career Coll. Hldg. Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (unrelated individual investors with no litigation plan and without largest financial interest observed to be a potentially lawyer-driven "group"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y 2001) (rejecting amalgam of institutional investors, day traders, and individuals with a multitude of counsel based upon lack of prior contact with each other or their own counsel); *In re Donkenney Inc. Sec. Litig.*, 171 F.R.D. 156, 157-8 (S.D.N.Y. 1997) (rejecting proposed *post motion* aggregation of unrelated institutions and individuals).  STRS/SURS does not suggest that any such facts are present here.

[12] These Declarations are attached as Exs. 2-6 to the January 28, 2008 Entwistle Decl.  STRS/SURS suggest, without citing any authority, that "after the fact" Declarations fail to demonstrate cohesiveness.  (STRS/SURS Opp. at 6, 12.)  STRS/SURS' argument not only lacks a legal basis, but is also negated by the detailed Complaint, the Preservation Motion, and the Stay Lift Motion that the GPFs agreed to file together prior to the commencement of these lead plaintiff proceedings.  Similarly disingenuous is STRS/SURS' claim that the "far-flung nature" of the GPFs presents a cohesiveness problem.  Ohio's current counsel markets exhaustively in Europe and files numerous lead plaintiff applications on behalf of domestic *and* international plaintiffs.  *See* Section II.B., *infra*.

the final structure of the "U.S. Pension Fund Group" could only have been certain after the date

upon which they definitively rejected further members -- January 4, 2008.  (*See* STRS/SURS

Opp. at 9-11;[13] (Jan. 28. 2008 Silk Decl. Ex. B ¶ 5.)

There is also no evidence that the GPFs formed a group in "bad faith" to defeat the

STRS/SURS motion.  In this regard, Colorado PERA and TCRS, standing together ($65,183,407

in FIFO losses for the period from January 1, 2004 to November 5, 2007), and AP4 and AP7,

standing together ($60,270,463 in FIFO losses), have greater financial interests in this litigation

than STRS/SURS ($50,843,929 in FIFO losses), thereby negating any finding of "bad faith"

under the cases that STRS/SURS cite.[14]  Far from possessing any ill motive, the GPFs' sworn

Declarations and their collective work in prosecuting the Class's claims to date demonstrate that

they are motivated to advance the best interests of the Class.[15]

### B.    The Claims of AP4, AP7, and PKA are Typical of the Class's Claims and These Sophisticated Institutions Are Not Subject To Unique Defenses

STRS/SURS speculate that AP4, AP7, and PKA *might* be inadequate lead plaintiffs

because Defendants *might* raise an argument that courts in Sweden or Denmark *might* not

recognize the preclusive effect of a judgment here.  (STRS/SURS Opp. at 14-17.)  Naked

speculation that foreign institutions will be subject to unique defenses on this basis is routinely

---

[13] Ohio STRS' claims of misuse of unidentified "confidential information," referenced openly in Ohio STRS' opposition memorandum (*see* STRS/SURS Opp. at 9-10), are the subject of submissions currently held under seal at the repeated strenuous request of Ohio STRS' counsel and will not be addressed herein.

[14] *See, e.g., Goldberger v. PXRE Group, Ltd.*, 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007)  (suspecting, but not concluding, that group was lawyer driven because the individuals were unrelated, had recited no litigation purpose, and only had a larger financial interest based upon aggregation); *Barnet v. Elan Corp.*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (pre-aggregation group members' greater financial interest than other applicants negated finding of putative "bad faith"); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266, 270 (3d Cir. 2001) (sophisticated and interested group that can function as an active agent for the class is an appropriate lead plaintiff and "[a]llegations of impropriety are not proof of wrongdoing").

[15] *See, e.g,* Smith Decl. ¶¶ 12, 17-18, 25; Hennessee Decl. ¶¶ 11, 14, 17-18; Andersson-Kåremar Decl. ¶¶ 11-12, 15, 17; Gröttheim Decl. ¶¶ 11-12, 15, 17; and Jakobsen-Pedersen Decl. ¶¶ 10-13, 16 (Exs. 2-6 to the January 28, 2008 Entwistle Decl.); *see also* GPF Complaint ¶¶ 364-372.

rejected by courts in this District and elsewhere.[16]  Together with the other GPFs, AP4, AP7, and

PKA submitted to this Court's  jurisdiction by filing a Complaint (and related motions) against

Citigroup and other defendants and by moving to be appointed as lead plaintiffs.  Principals from

each fund have also submitted declarations affirming their understanding and intention to be

bound by the judgment of this Court.  (*See* Andersson-Kåremar Decl. ¶ 3; Gröttheim Decl. ¶ 3;

Jakobsen-Pedersen Decl. ¶ 3) (Exs. 2-6 to the January 28, 2008 Entwistle Decl.).)  There is

simply no question that any judgment of this Court will be binding on AP4, AP7, and PKA

should they be appointed lead plaintiff.  *See, e.g., Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp.

2d 1129, 1139 (C.D. Cal. 1999) (finding judgment enforceability "not an issue with respect to

the selection of Lead Plaintiffs since those persons will clearly be bound by the judgment of the

court").[17]

Moreover, litigating the issue of the enforceability of a judgment rendered here in

jurisdictions abroad is not "unique" to AP4, AP7, and/or PKA.  Any lead plaintiff, regardless of

---

[16] *See, e.g. Corwin v. Seizinger*, 2008 WL 123846, at \*5 (S.D.N.Y. Jan. 8, 2008) (appointing Luxembourgian investment firm as lead plaintiff); *Olsen*, 233 F.R.D. at 109 (appointing a German fund manager as lead plaintiff); *In re NPS Pharms., Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 87231, at \*13 (D. Utah Nov. 17, 2006) (appointing Luxembourgian institution as lead plaintiff); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 153 (D. Del. 2005) (appointing German investment manager lead plaintiff calling "res judicata argument a red herring"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at \*5 (N.D. Ohio May 12, 2004) (appointing Austrian institution as sole lead plaintiff, holding "[t]he…attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm…is insupportable."); *see also Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) ("In light of today's travel and communication methods, the geographical location of the [foreign lead plaintiff movants] are irrelevant.").

[17] The concern regarding the appointment of foreign investors rings particularly hollow coming from Ohio/STRS' counsel in light of that firm's extensive and well-publicized representation of foreign clients in leadership roles in securities class actions, including its representation of the *Ontario Teachers' Pension Plan Board* in at least three cases, including two in this District (*In re Nortel Networks Corp. Sec. Litig.*, No. 05-MD-1659 (LAP) (S.D.N.Y. Dec. 26, 2006) and *Koesterer v. Washington Mutual, Inc.*, 1:07-CV-9801-CM (S.D.N.Y. filed Nov. 5, 2007) ("*WaMu*").)  In *WaMu*, Ohio STRS' counsel characterized its foreign institutional client as "a paradigmatic lead plaintiff under the PSLRA" (Ex. 3 at 2) and as "precisely the type of sophisticated institutional investor that Congress and this Court have recognized as being ideally suited to control this type of securities class action litigation." (Ex. 4 at 1.).  Also noteworthy are BLB&G's efforts to recruit European clients. *See, e.g., Class Action Impacts on European Investors*, GLOBAL PENSIONS, July 2007, at 48 (Ex. 5); BLB&G Newsletter, ADVOCATE, January 2008, at 1 ("Do European investors have the same right to claim as US investors?  Yes, they have exactly the same rights.") (Ex. 6.  Indeed, BLB&G provides ready translation of its website into a variety of different languages (Ex. 7) including *Danish* (Ex. 8) and *Swedish* (Ex. 9).

nationality, has a fiduciary obligation to litigate these issues at the class certification stage of this case in the best interests of all members of the Class -- including those that are not U.S. citizens.[18]  *See Molson*, 233 F.R.D. at 153 (finding that "the preclusive effect in Germany of a judgment here is not a question unique to [German investor movant Metzler Investment GmbH] … it would apply to any and all members of the class"); *In re GPC Biotech AG Sec. Litig.*, No. 07 Civ. 6728 (DC), slip op. at 11 (S.D.N.Y. Jan. 8, 2008) (Ex. 10) (attacks on foreign plaintiffs not "unique").[19]

Furthermore, courts repeatedly hold that mere speculation about the enforceability of a U.S. Court's rulings in foreign jurisdictions (like that offered here) falls well short of the "proof" required to rebut the presumption that the GPFs (including AP4, AP7, and PKA) are the most adequate plaintiffs.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Instead, this "red herring" issue could only arise as a non-dispositive factor when considering the superiority of the class action under Rule 23(b)(3) if defendants could demonstrate a "near certainty" that courts in Sweden and/or Denmark would not recognize or enforce a judgment rendered here.  *See Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d. Cir. 1975); *see also, In re Lloyd's Am. Trust Fund Litig.*, 1998 WL 50211, at *14-17 (S.D.N.Y. Feb. 6, 1998) (certifying a class ***against Citibank -- the predecessor of Citigroup*** -- including foreign investors, despite evidence that foreign plaintiffs

---

[18] Notably, the cases that STRS/SURS cite are not even factually analogous as each of these decisions primarily address the court's subject matter jurisdiction over *foreign* purchasers of a *foreign* company's securities on a *foreign* exchange under the "conduct test."  *See, e.g.*, *NPS Pharm.*, 2006 U.S. Dist. LEXIS 87231, at *13 (*res judicata* issues not present where defendant is a U.S. company and plaintiff purchased its shares on a U.S. exchange).  Indeed, none of the cases that STRS/SURS cite addresses the facts presented here:  sophisticated foreign institutional investors purchasing securities of a *United States issuer* on a *United States exchange* seeking damages based upon a *fraud committed in the United States*.

[19] STRS/SURS' reference to a brief that Colorado PERA submitted in *In re Royal Ahold, N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003) is particularly disingenuous.  In *Ahold*, the Court denied the lead plaintiff motion of a foreign (German) purchaser of a foreign company's stock on a foreign exchange based primarily upon potential issues regarding *subject matter jurisdiction*.  Ultimately, the *Ahold* court certified a global settlement class.  *See In re Royal Ahold*, 219 F.R.D. at 352-35.  STRS/SURS misapprehension of the court's decision in *Ahold* is particularly puzzling given that Ohio's current counsel represented the German lead plaintiff applicant that the court rejected.

8

could bring a second lawsuit in at least five foreign countries because a U.S. judgment -- even if not recognized -- would not be "without value" to foreign courts); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 134 (S.D.N.Y. 2001); *In re Turkcell Ilettsim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 360 (S.D.N.Y. 2002). Unfounded speculation and inapplicable case law have no bearing upon AP4, AP7, and/or PKA's ability to adequately represent the Class.

### C.   The Fact That Colorado PERA and TCRS Sold More Citigroup Shares Than They Purchased During the Class Periods Does Not Render Them Inadequate

It is beyond peradventure that "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball." *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *5 (N.D. Ill. Mar. 15, 2005). In fact, numerous courts have appointed net sellers as lead plaintiffs. *See, e.g., Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007) (because movant had a LIFO loss he "should have no trouble proving damages"); *Frank v. Dana Corp.*, 237 F.R.D. 171 (N.D. Ohio 2006) ("though the [movant] may have been a net seller, it should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff"). Likewise, courts have certified net sellers as class representatives under Rule 23. *See, e.g., In re CIGNA Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 349-51 (E.D. Pa. 2006) (certified net seller because offsetting purported gains is not the appropriate measure of damages under Rule 10b-5 and the PSLRA) (collecting cases); *In re NTL, Inc. Sec. Litig.*, 2006 WL 330113, at *10-11 (S.D.N.Y. Feb. 14, 2006) (certified net seller where allegations of partial corrective disclosures were present); *In re Schering-Plough Corp. Sec. Litig.*, 2003 WL 25547564, at *26-27 (D.N.J. Oct. 10, 2003), (movant's "Section 10(b) claim is based on losses that resulted from *purchases of*

Schering-Plough stock made *during* the Class Period.  Any capital gains made with respect to the *sale* of shares purchased *before* the Class Period are irrelevant.") (emphasis in original).[20]

Here, Colorado PERA and TCRS have significant losses and have demonstrated with the other GPFs that they possess the motivation and initiative required to lead this litigation for the Class.  Excluding lead plaintiff candidates that will clearly be able to participate in any recovery obtained in this litigation, as ATD urges, would be senseless and wholly contrary to the intent of the PSLRA.

## CONCLUSION

No other lead plaintiff applicant has offered the "proof" required to rebut the presumption that the GPFs are the most adequate plaintiffs to represent the Class.  The GPFs, therefore, respectfully request that the Court consolidate the Action, appoint the GPFs as Lead Plaintiffs, and appoint their selected attorneys, Entwistle & Cappucci LLP and Schiffrin Barroway Topaz & Kessler, LLP, as Co-Lead Counsel to prosecute this litigation in the best interests of the Class.

Dated:  February 7, 2008

Respectfully submitted,

**ENTWISTLE & CAPPUCCI LLP**

/s/
_____

Andrew J. Entwistle, Esq. (AE-6513)
Johnston de F. Whitman, Jr., Esq. (JW-5781)
Richard W. Gonnello, Esq. (RG-7098)
Stephen D. Oestreich, Esq. (SO-8933) (Of Counsel)
Jonathan H. Beemer, Esq. (JB-0458)
Jordan A. Cortez, Esq. (JC-4121)
Laura J. Babcock, Esq. (LB-3198)
280 Park Avenue
26th Floor West

---

[20] *See also In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52 (D. Mass. 2005) ("To the contrary, I find a transaction-based methodology, which allows claims for unprofitable transactions without offsetting that recoverable loss with gains from profitable transactions, to be more consistent with the provisions of the statute and rule.")

New York, New York 10017
Telephone:  (212) 894-7200

- and -

**SCHIFFRIN BARROWAY TOPAZ
    & KESSLER, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Richard S. Schiffrin, Esq.
Andrew L. Barroway, Esq.
David Kessler, Esq.
Darren J. Check, Esq.
Sean M. Handler, Esq.

*Attorneys for Plaintiffs, Public Employees'
Retirement Association of Colorado, Tennessee
Consolidated Retirement System, Sjunde AP-fonden,
Fjärde AP-fonden, and Pensionskassernes
Administration A/S and, Proposed Lead Counsel for
the Class*

11